Good morning, Your Honors. May it please the Court. Madeleine Felden and co-counsel Amy Nguyen, working under the supervision of Evangeline Abreel, on behalf of petitioner Mr. Roberto Blandino-Medina. I will argue that Mr. Blandino's removal does not render his claim moot, and my co-counsel will argue that Mr. Blandino's conviction is not a particularly serious crime. Can we go a little bit slower? What was your first point? You were going to argue? That Mr. Blandino's removal does not render his claim moot. And my co-counsel will argue that Mr. Blandino's conviction is not a particularly serious crime and that he still qualifies for CAT relief. We would like to reserve two minutes' rebuttal time. All right. Mr. Blandino-Medina's removal from the United States does not render his claim moot. First, Mr. Blandino retains a personal stake in the outcome of this lawsuit and his removal results in collateral consequences that satisfy the Constitution's case or controversy requirement. Can we talk? I want to address those because I want to make sure I understand the setting here correctly. Because this was denominated a serious crime, Mr. Blandino-Medina can't apply to come back to the country for 10 years, correct? Yes, Your Honor. He also faces a lifetime ban because it was a crime of moral turpitude. Yes, Your Honor. But the lifetime ban could be waived at the discretion of the Attorney General. Yes, Your Honor. And in this case, you asked the Attorney General to waive the lifetime ban, right? Yes, Your Honor. And the Attorney General said no way. Yes, Your Honor. However, his inadmissibility for having the crime of moral turpitude is not a bar to withholding of removal. And because Mr. Blandino is challenging the finding that his crime is a particularly serious crime. I understand that. So let's assume that we agree with you. Okay. That we agree that this is not a particularly serious crime. Nonetheless, he self-deported himself, in effect. He went back to Nicaragua. Your Honor. Right? Mr. Blandino lifted his stay of removal. Lifted his stay. So he determined on his own accord that rather than remain in custody in the United States, he preferred to go out of the United States. Yes, Your Honor. However, that question seems to focus on two aspects. I just want to, before you move on, I want to understand this. And so now in order to come back, he would need the Attorney General to grant a discretionary waiver, assuming you win on the serious crime issue, correct? If Mr. Blandino is able to argue that his crime is not particularly serious. Yes. Let's assume we hold this afternoon that his crime was not particularly serious. Mr. Blandino Medina still can't come back to the United States unless the Attorney General grants a discretionary waiver. Correct? Yes, Your Honor. However. He's committed a crime of moral turpitude. Yes, Your Honor. However, the crime of moral turpitude is in a bar to the withholding claim. I understand. And it's not a bar to the withholding claim if the Attorney General in his discretion says, I choose to grant you a waiver. People with convictions of crime of moral turpitude can't enter the country unless the Attorney General in his discretion or her discretion grants a waiver. However, if Mr. Blandino does win on the particularly serious crime point, it would remedy the removal and, therefore, he never would have triggered the bar. See, that's what I don't understand. How does it remedy the removal? He was removable because he committed an aggravated felony. Your Honor, Mr. Blandino was removed based on his unlawful presence and not based on the fact that he committed an aggravated felony. But he has committed an aggravated felony, has he not? Yes, Your Honor. So I'm still trying to figure out why this case is not moved. I take it your argument is, your best argument, I think, is that, well, the Attorney General refused to exercise his discretion this time to let Mr. Blandino Medina remain despite his criminal record. But a future Attorney General might make a different decision. Is that your argument against mootness? Yes, Your Honor. If the Court agrees with Mr. Blandino in that the determination of the conviction is not a particularly serious crime, he would qualify for grant withholding, and the Attorney General, because it's not a particularly serious crime anymore and it's only an aggravated felony, may have different discretionary grounds for letting him back in. Additionally, to render this claim moot would contravene Congress's intent that Petitioners for Review, that the Court retains jurisdiction over Petitioners for Review even after Petitioner's removal. The Immigration and Nationality Act provides a statutory right to judicial review. Additionally, IHRA IHRA removed the jurisdictional bar to claims of aliens who had been removed. This is a separate case. Does that apply to people who self-removed aliens? I guess that's my question. I understand the government can't ship somebody out of the country and say, ha-ha, your claim is now moot because you've been removed. But in a case where your client chose, for probably valid reasons, it's better to be someplace else than to be in detention, chose to remove himself from the country, does the cases in the lawyer's site, do they still apply? Yes, Your Honor. Whether someone lifts their stay doesn't have the means to apply for a stay in the first place or is denied a stay should have no bearing on this decision because Congress completely decoupled the right to judicial review with the physical presence of a Petitioner. Additionally, Mr. Blandino only lifted his stay after the government opposed the stay. Therefore, the Congress's intent was to have continued jurisdiction even after removal, and his removal, although he did lift his stay voluntarily, was a result of the removal order. Your Honors, I would like to reserve the rest of this time for my co-counsel's argument. Thank you. Can I just quickly ask you about the waiver? Are you suggesting the Attorney General would still have the power to reconsider and adjust the waiver of his reentry based upon a crime of moral turpitude sometime in the future, even though it's been denied at this point? Yes, Your Honor. So that that is a viable claim or potential claim that he has. Yes, Your Honor. Thank you. Good morning, Your Honors, and may it please the Court. Amy Nguyen, on behalf of Mr. Blandino, I will argue that his conviction is not a particularly serious crime and that he is eligible for cat deferral. The United States is bound by its treaty obligations to not send individuals back to countries where they would be persecuted or tortured. Therefore, here, there was reversible error for three reasons. First, the BIA utilized the wrong standard in determining a particular serious crime for withholding purposes. Second, even if this standard is acceptable, this would be a rule-making decision and cannot retroactively be applied to Mr. Blandino. Lastly, even if he is assumed to have a particularly serious crime, Mr. Blandino would still be eligible for cat deferral. For all of these reasons, we respectfully request that the Court reverse the BIA's decision or, in the alternative, remand to undergo the proper analysis. As to my first point, an analysis of the asylum and withholding provision demonstrates that the BIA is not authorized to designate crimes as facially particularly serious for withholding purposes as it does for asylum purposes. For the asylum statute, it is stated that any aggravated felony is a particularly serious crime and that the Attorney General may designate by regulation for asylum. This, with the withholding provision, this language is omitted. And as stated in Barnhart v. Sigman, when Congress includes particular language in one section of a statute but omits it in another section of the same act, it is generally presumed that Congress acts intentionally and purposely. Here, because Congress gave the Attorney General discretion in asylum purposes but not withholding purposes, it is clear that there's a distinction and a difference between asylum and withholding. There's a higher threshold in determining whether a crime is particularly serious for withholding purposes. How do you get that out of the language of the statute? All the statute says is the previous sentence, which is the one that says five years or per se, shall not preclude the Attorney General from determining that, notwithstanding the length of the sentence, an alien has been convicted of a particularly serious crime. The statute doesn't speak at all, does it, to whether or not there must be an inquiry into the facts? Your Honor, looking at the history of the INA, first, because for asylum purposes any aggravated felony is particularly serious. But for withholding, it's an aggravated felony that has to be sentenced to five years or longer. So that ---- But there's a second category. The second category are the ones that the Attorney General determines are particularly serious crimes. Yes, Your Honor. But looking ---- But does the statute speak to how the determination should be made? Yes, Your Honor, because when we look at the history of the INA, specifically to this point, in 1990, the statute was similar to asylum where any aggravated felony is particularly serious. In 1996, it was first amended to say that the Attorney General can override this per se rule to ensure compliance with the 1967 protocol. And it was last amended by Ira-Ira in 1996 to say that it's five years. An aggravated felony with five years is per se particularly serious. And then it gives the Attorney General discretion. However, this Court in Fan Beholder and in Afridi and in Anaya Ortiz stated that when determining a crime whether to be particularly serious, a frantescu fact ---- a frantescu analysis must be utilized. Here's my question. I guess it's a question for both sides. When we did that, we said that's because that's the way the BIA interprets the statute. It thinks a frantescu analysis is necessary and, therefore, we will, in effect, defer to their interpretation of the statute. Now they appear to have changed their interpretation of the statute. Put aside due process problems going back and forth, aren't they entitled to change their interpretation? Your Honor, no. Here the statute is clear and the BIA would be entitled to Chevron deference when the statute is ambiguous. Furthermore, this specific case, it was a one-member unpublished decision. And under Garcia-Quintero, the one-member unpublished decision is not owed Chevron deference. Furthermore, the government relies on the matter of NAM, and within matter of NAM, it is stated that sometimes, in some cases, per se designations are allowed. However, these two cases that were cited in NAM is Garcia-Garaucho and Hamama. In Garcia-Garaucho, it's from a 1986 decision, and this predated the Ira-Ira, which was then stated in 1996. Furthermore, this Court in Efreeti rejected Hamama, Hamama, Mama. And that's it. I think that's it. We've all had trouble with that case. It does sound like a Hawaiian dream. And so this Court had rejected Hamama in saying that the Franteschi factors must be analyzed, and therefore, this Court and the BIA must uphold the proper legal standard in determining whether a crime is particularly serious for withholding when it's not facially designated. So what I get out of all that is you think the statute is unambiguous. As to this point, yes, Your Honor. As to this point. And so that even if the BIA put aside all the errors you think it's made so far, in a future case, we're going to say, look, we just want to be really clear. We think the elemental matter works, and we intend to apply it from now on. You think that would be not authorized by the statute? Your Honor, because the for withholding purposes, it's case-specific analysis that's required. And would you think the statute itself requires case-specific analysis? Yes, Your Honor. It's not ambiguous on that point. No, Your Honor. Furthermore, in Delgado, in Justice Reinhart's concurrence on Note 3, it said that he specifically said that for withholding purposes, only per se designations are those that are aggregate felonies for five years or longer. And so it's clear in the statute when it differentiated between asylum withholding, aggregate felonies, and aggregate felonies with five years or longer. And because the history of the INA and the well-recognized practice looks at the Franteschi factors, then the Franteschi fact or the case-specific analysis, it must be upheld. I see my time has expired. Well, so essentially what you're saying is that because the statute says aggregate felony plus five years, Congress has made that very clear, and from that you can conclude that anything other than that cannot be per se. But you do recognize that there are other Ninth Circuit cases which say the BIA can do a number of things, like presumptive serious offense in the Miguel-Miguel case, as an example, provided that there are available hearings so that at least there could be some discussion of the background of the case. Yes, Your Honor. But a presumption still must go through the necessary hearing in Miguel-Miguel. They still went through the Franteschi factors. And so the legal standard that must be upheld is under Franteschi. Thank you. We'll give you two minutes for rebuttal, because we carried you over by questioning. May it please the Court. Zoe Heller on behalf of the Attorney General. This case involves a native and citizen of Nicaragua who chose to lift his temporary stay of removal and return to the same country that he now claims he will be subjected to torture to, and therefore, this case is now moot and the Court should dismiss it. Would you agree that if instead of him volunteering to lift his stay of removal, you had come to this Court, and I take it as you apparently intended to, and the Court said we lift the stay, that the case would not be moot? If the Court had denied his stay of removal? Are you asking if he had gone through the whole process? Let's go back to the beginning. The Court had denied his stay of removal, and just he was removed because we denied the stay. Would the case then have been mooted? Well, this Court has held in an unpublished decision in Singh, which Judge Baio was on the panel for that, that the stay was actually denied, the alien was removed, and this Court found that it lacked jurisdiction because the only challenge is to withholding and cap protection. So although it's an unpublished decision. Do you have any published decisions anywhere that say that? No. There's no buy. It doesn't turn necessarily on whether or not the stay is denied or whether or not the alien chooses to affirmly lift the temporary stay of removal, which is there for his protection. There's no definitive case law making the case turn on that as to whether or not it's moot. In this circuit, the Kars, the controlling case, and one of the aliens in that in Shima, this Court found that because there was an independent ground for the alien's inability to reenter the United States, that the case was now moot because his removal and denial of withholding did not affect that. And what your opponent says is, yes, there is an independent ground, but if I could just knock out this serious crime stuff, that independent ground would be waivable by the Attorney General, and therefore, I still have an interest in knocking out this serious crime. How do you respond to that? I respectfully disagree with that position. The particularly serious crime determination has no relevance to the determination that he was found to have committed a crime involving moral turpitude. That was a separate determination for discretionary relief that he has not challenged. And he did apply, as Your Honor pointed out, for the discretionary waiver. That was also denied because the immigration judge was concerned with Mr. Blandino's criminal history in this case. And again, that finding went unchallenged. There is absolutely no authority where, okay, I've been denied. I have waived my right to challenge that, but I'll try again, and that's fine. There's absolutely no authority for that. But he can do that, right? I mean, he still has the ability, assuming that he is being held outside the United States just because it involves a crime involving moral turpitude, he has the right to ask for that waiver. That is a viable right that he has. And that is essentially argued to be by him, by Mr. Blandino, a right that he has that is a collateral consequence of this particular, well, this particular case. He had that right, and he asked for that, and it was denied, and he never challenged that. But that's not permanent. That's not permanently. He could do it in a year or two years or five years. It's the finding of the agency, and the agency is the Attorney General's delegate, and then that finding stands before this Court. And if you apply the analysis in Carr, that holds, it withstands review, and this petition is now moot. And we're not, I think in this case, or at least there's not a serious argument being made that the Attorney General abused his discretion in withholding waiver, you know, in not granting this discretionary waiver. The question is, I think posed by your opponents, is could Mr. Blandino in five years or in six years apply again for a waiver? And I understand his removal in this case, I take it, was for what reason? He was a, I believe he was a illegal entry. Right. He was a legal entrance. And so he, there's a basis for removal. He also has a crime of moral turpitude, which would prevent him from returning. Right. So now his question, the question they raise is could he somewhere down the road say, I've got a new Attorney General, the new President, this Attorney General is more humane, or the BIA is more humane these days, so I'm going to apply again. Could he apply again? Well, the way it is right now, he has to remain outside of the country for a requisite period of time before he then can apply for other forms of relief to attempt to reenter the United States.   States. But he's a serious crime, therefore he can't apply for the next 10 years. No, the particularly serious crime determination only goes to his denial of withholding a removal. It had nothing to do with why he was found removable or why he can't come back in. No, I understand. But doesn't that bar him for some period of time for apply? Make him ineligible for waiver for some period of time? Isn't that 10 years? Right. He's barred because of that for 10 years. He can't, yes. So after the 10 years expires, he can then seek to come back to the United States. And if that didn't exist, he's barred because of the crime of moral turpitude, but he can actually ask for a waiver. Which he did, and that was denied. Yeah, and I guess my question is could he ask again within the next 10 years if he didn't have this serious crime? I would never tell someone they can't ask. However, I believe in this case it's been determined and in applying the case law here, the case is now moot. Assuming this Court finds that the case is not moot, Chevron deference should be afforded the finding here by the Board that Mr. Blandino's conviction of lewd and lascivious conduct with a 13-year-old girl is a particularly serious crime based on the elements alone, and that will bar him from withholding of removal. So what do you say when Congress decided that a per se finding made after the five years requirement is set takes care of that particular issue? I mean, Congress basically says aggravated felony plus five years in prison. That is a per se standard. And why can the BIA then decide, well, we accept Congress has done this, but we can decide it on our own? Because the Attorney General is still left with the discretion as to determine how these other aggravated felonies that do not have the five-year-plus sentence, whether or not those crimes are particularly serious. Again, that is the Attorney General's discretionary authority to make that determination. My reading of the legislative history on this is that Congress changed, put in the five-year ban and basically did away with all aggravated felonies are considered particularly serious in an effort to avoid minor crimes being put into that category. And I think that if you look at the decisions by the board in Frantescu and NAM, they recognize the spectrum, that there are some crimes which on their face, even though they're felony convictions, are not particularly serious, but some which on their face such as this where it's lewd conduct against a 13-year-old girl are on their face. I appreciate the nature of this case, but what happens if the BIA decides that a, what you call a minor offense, in fact, is a particularly serious offense in their own discretion, and then you go to the courts and you say ask for Chevron deference. So basically, you have the power to expand this area of per se particularly serious offenses to even minor offenses. Well, Chevron deference applies to the Attorney General's manner of adjudication. That's what the board did here. It adjudicated, based on Frantescu and NAM, that on the elements alone, this conviction was particularly serious. On review of that, and there's no challenge here, but on review, say, in another conviction, and even on this one, you can look to see whether or not the board abused its discretion in reaching that determination. There's no argument raised that the board did abuse its discretion, and I'm going to reiterate that the board did not, because the board did not.  have the expanded ability to classify even misdemeanors such as jaywalking as particularly serious crimes. Well, misdemeanor wouldn't classify. Again, we're looking only at aggravated felony offenses that would be under the 5-year bar. So we're still just looking at the aggravated felony charges, which is uncontested in this case. The attorney general is permitted to exercise discretion following the precedential decisions in NAM and Frantescu by looking solely at the elements. And in this case, the board did, as well as the IJ, went through the elements of the offense. It's an aggravated felony, for instance, I think under Section 111A, for a person to assault a Federal police officer, a Border Patrol agent. Whether it's an assault depends on the degree of violence. Maybe elbowing is an assault. Maybe pushing with your hands isn't an assault, right? So that probably has a 1-year sentence, which makes it a felony. As far as you're concerned, any person who assaults a police officer, the BIA can say that's a particularly serious crime. Well, let's take your example for assaulting a Border Patrol agent, assuming that it's a 1-year AGFEL. We're in the withholding context. The board can look at that particular charge, see how the cases have analyzed that, and then make its determination whether or not that crime is on its face, particularly serious. On what basis does it make that determination? What is the subset of desiderata under which it makes that decision? I thought that's what Frantesco did, but you're saying that they can make it on some other subset of factors. What are those factors? The factors of the elements of the offense. But how does the board, all offenses have elements, and there are many aggravated felonies. Yes. Obviously, not every aggravated felony is a particularly serious crime, correct? Yes. So how does the board decide which ones are and which ones aren't based on the elements? Through its manner. What are the desiderata, as Judge Bay has said? What are the reasons? How do you distinguish a particularly serious felony from not an aggravated felony from another one based solely on its elements? How do we determine whether you've abused your discretion? Well, again, the Attorney General can exercise its discretion in adjudicating that, and I do not know the myriad of categories of aggravated felony offenses. But here's the problem, and we'll put it in sequence. I mean, is it like pornography? We know when we see it? This is a case where, to tell you the truth. I would argue here, maybe, yeah. To tell you the truth, this looks like a serious offense to me. It involves the lewd touching of a minor with intent to arouse. But by what legal standard do I judge whether the Attorney General has abused his discretion in classifying this one as a particularly serious offense as opposed to some other one? How do we – he doesn't have unlimited discretion, so how do we review the decisions? As to whether or not the agency's decision is rational. And here, if you look, the immigration judge and the board looked to the elements of this offense, how both the Ninth Circuit has classified this particular conviction as a crime of violence and an aggravated felony, has looked at California law interpretation of the statute, noting that the defense of age as to the victim is no defense. It's also found, and it's undisputed, that Mr. Blandino had to register as a sex offender and that the – by nature of the conviction under 2288A, the victim was necessarily 13 years old or younger. But isn't the board's practice to send the issue down to the I.J. and have the I.J. make this determination as to whether, in fact, this crime is particularly serious? We're not even talking about the BIA deciding this. It's the actual individual judge who makes this decision. And it was here, Your Honor, because it had been – the board had remanded it back to the immigration judge because at – during the proceedings, the issue as to whether or not the particularly serious crime bar was not raised. So the board, in fact, did remand it back to the immigration judge to make that finding. He did make that finding. Then it went on to appeal to the court. So that every I.J. has the power to decide, her or himself, that a particular crime is particularly serious, and as a result, there is no right to a full hearing. Is that what it really means? No. There is – this is not a blanket waiver and we're going to designate these crimes, these are particularly serious, and that's the end of it. Again, this Court will need to review whether or not the agency's decision is rational. And here, there was – That's not different. That's different from abuse of discretion. It's irrational now. That's a different thing. Well, rational would go to whether or not deference would be afforded to the manner of adjudication, whether or not that manner in looking at the elements is – was performed in a rational manner. And here, the immigration judge, if you look at that decision, which was affirmed by the board, clearly went through. This was not a one-sentence decision. No, but here's my problem. It seems to me that any aggravated felony, one could rationally consider to be a serious crime. It's bad stuff. In this case, Mr. Blandino Medina did something that sounds to me like it's pretty horrible. So doesn't this really mean that all aggravated – that the Attorney General can classify all aggravated felonies as elementally serious crimes? And therefore, subsection A is a serious crime. It wouldn't be irrational when you look at the elements of any aggravated felony to say, that's pretty serious stuff. Well, again, Your Honor, that – there is a spectrum that both Frantescu and NAM recognize, that some on their face are so minor, no way it could even come within the ambit. There's some, like this crime, which are particularly heinous, that are. So describe for me an aggravated felony that on its face is so minor that it could be determined serious. Well, again, I never did criminal law to determine. Shouldn't that decision really be made by Congress, not by us, and not by the BIA? Well, Congress left – again, there is the – after you read the five-year per se finding, it left discretion to the Attorney General and to his delegate. Actually, what you said in your argument was really interesting, and I wasn't sure if it was really something that you intended to say. But you basically said that the reason that Congress made the five years is that the Congress was concerned that this could be applied much too broadly, and as a result, they wanted to decide that there was a threshold, five years. Because obviously, if the BIA can decide at its discretion that, in fact, something is particularly serious, there's no hearing. Everything is completely changed, and the person is gone. And so Congress may have been thinking in its own wisdom, let's limit this to this five-year period of imprisonment, and then allow the BIA to decide every – all other cases considering all of the factors that they generally use. Well, again, while that was – and I agree, because that is encompassed into the Frantescu and Ennian finding that there are some which on their face are so minor now, some which are so grave that are particularly serious, based solely on the elements. And it's when you get into that gray area, and when that's contested, then you go into the case-by-case analysis. But here, the agency did look at the elements, did perform the necessary review, and this Court should – I see that I'm out of time – dismiss this petition as moot or, in the alternative, deny the petition for review. Thank you very much. Thank you. Thank you for your argument. Rebuttal. Your Honor, on rebuttal, I will make one point, and my co-counsel will make one point. Beyond the waiver that we were speaking of earlier, the U.S. Supreme Court in Ken recognized and the Attorney General asserted that an alien who has successfully challenged the Board's order may be returned to the U.S. and that the U.S. will facilitate this return. That's a case – that was a case, as I understand it, where the only reason for removal was the issue in front of the Court. So if the Court decides that somebody was improperly removed, then the United States has to bring them back. But here, Mr. Blandino-Mandino was removed, A, because he was illegally in the country, and B, there's a bar to his reentry because he committed a crime of moral turpitude. So I don't know that that case is helpful to us. Am I wrong? Yes, Your Honor, but the policy is to bring back successful petitioners, and Mr. Blandino does have a petition for review pending, and his removal was a result of the denial of withholding. Therefore, if he is granted withholding, then the U.S. does have a policy in place to return successful petitioners. Additionally, for the waiver, the immigration judge noted that in denying the waiver, it was on his basis of discretion that there had been only a short period of time in between the crime and the removal order. And therefore, in the future, Mr. Blandino might gain additional equities or his U.S. citizen mother may gain some extra need to have him present with her. Thank you, Your Honor. Your Honors, I just wanted to clarify that the immigration judge on Administrative Record, page 280, that he did find that when looking at the Francesca factors, that Mr. Blandino does not have a particularly serious crime. The immigration judge considered the circumstances of his facts and considered the fact that he honestly believed that the victim was 19 years old. And additionally, the California Penal Code, Section 288A, has a minimum sentence of three years with a maximum sentence of eight years. Mr. Blandino was only sentenced to one year. And so taking all of this into consideration, the immigration judge found that he did not have a particular serious crime and did grant him withholding of removal. Only when he was instructed to look specifically at only the elements of the crime without taking any other considerations, did he find that Mr. Blandino had a particularly serious crime. And as stated earlier, there is a wide spectrum of whether a crime is particularly serious. Therefore, that's why Congress had the intent of only making aggravated felonies with five years or longer per se particularly serious. But for all other crimes, the Francesca analysis should be held so that case-specific analysis can be applied to each individual. Thank you. Thank you very much. And I'd like to take a moment to thank the Santa Clara Law School for making the students available and for your very thorough preparation, and Ms. Sabriel for your help in preparing them. It's always a pleasure to see people taking such a great interest in important matters such as this case and cases that come before us. Thank you very much for your appearance. Thank you. Bye-bye.
judges: Sessions, Bea, Hurwitz